Vincent R. **CHASTANG**

v.

**FLYNN AND EMRICH COMPANY et al.**

Frank **UGIANSKY**

v.

**FLYNN AND EMRICH COMPANY et al.**

**Civ. A. Nos. 71–593–M, 71–652–M.**

United States District Court,
D. Maryland.

July 5, 1974.

Supplemental Memorandum July 25, 1974.

Harry Goldman, Jr., Baltimore, Md., for plaintiffs.

David S. Cordish, Baltimore, Md., for defendants.

## OPINION

JAMES R. MILLER, Jr., District Judge.

### Background

For reasons which are set forth in the prior reported opinions in these consolidated cases at 337 F.Supp. 807 (D.Md. 1972), and 365 F.Supp. 957 (D.Md. 1973), this court found a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. with respect to the noncontributory retirement plan of Flynn and Emrich Company. Plaintiffs, two retired male employees of Flynn and Emrich Company, were discriminated against on the basis of sex in violation of Title VII when they respectively retired on July 25, 1968, and March 24, 1969, and received only 50% of their vested interest in the retirement plan trust fund as opposed to the 100% of the vested interest which a similarly-situated female employee would have received.

Pursuant to my opinion and order of October 26, 1973, 365 F.Supp. at 969 et seq., a trial was held on the issue of damages.

### Discussion

#### I

Louis K. Nielson, an employee of The Equitable Trust Company, is clothed with the day-to-day responsibility of carrying out the duties of The Equitable Trust Company in keeping the records, investing the assets, and paying out the benefits in accordance with instructions given by the Trust Committee of the retirement plan under Article X of the trust agreement. He testified that, both before and after July 2, 1965, the effective date of Title VII,[1] the interest of a retiree or pensioner in the trust fund was segregated and separated as of the date of his retirement and that a retired person had no interest in the for-

feitures of any other person's interest in the fund after the date of his retirement. The court asked the following question:

"So then, what a person who retired and who received a pension got was based upon whatever was in this account as of the date of his retirement?

"A. Yes, sir."

The court asked him this further question:

"Based upon your familiarity with the trust and the records of its prior administration, prior to July 1, 1965, as well as your familiarity with the current records, . . . is there any person who retired or was separated or terminated . . . before July 2, 1965, whose past or continuing payment from the trust was based in any way upon the forfeiture—the moneys forfeited by Chastang and Ugiansky or upon any anticipated forfeiture of anyone after July 2, 1965?

"A. No, sir."

From the testimony of Mr. Nielsen it is apparent, and the court finds as a fact, that forfeited interests in the trust fund due to the early retirement of males were simply a windfall to the fund at the time of the forfeiture, rather than an event which had been actuarially anticipated in previous years. No actuarial anticipation was made of the forfeitures of vested interests either prior to or subsequent to July 2, 1965. The amounts of the forfeitures of the vested interests of early male retirees were simply divided ratably among the then remaining unretired employee participants in the retirement plan, excluding officers and directors of Flynn and Emrich Company, and increased the value of their respective interests in the retirement plan as of the date of each of the forfeitures. In other words, the early retirement forfeitures by male em-

---

[1]. Subsection (a) of section 716, Pub.L. 88–352, 78 Stat. 259. Through a typographical error, the effective date was erroneously stated to be January 2, 1965, in my prior opinion in 365 F.Supp. at 969.

ployees after July 2, 1965, had absolutely no effect upon payments made to persons who retired before July 2, 1965, nor upon the basis on which payments would be made after July 2, 1965, to persons who retired prior to July 2, 1965. Therefore, a recovery by the plaintiffs in this case of the remaining one-half of their vested interest in the fund, which had previously been withheld from them by the discriminatory forfeiture provision made illegal by Title VII on July 2, 1965, will not result in giving a retroactive effect to Title VII. Accordingly, the measure of damages under the circumstances of this case is the full amount of the vested interest in the retirement fund which was withheld unlawfully from the respective plaintiff retirees upon their early retirement after July 2, 1965.

In the case of Chastang, the amount unlawfully withheld from him upon his early retirement on July 25, 1968, was the sum of $27,779.56. Ugiansky, who retired effective March 24, 1969, was required illegally to forfeit an interest in the fund valued at $12,804.12.

## II

For reasons which will now be discussed, the court does not believe that a case has been made by the defendants to reduce the recovery of the plaintiffs. The discriminatory early retirement provision of the Flynn and Emrich Company retirement plan was eliminated in December, 1970. Between July 2, 1965, and December, 1970, therefore, the forfeitures by early retiring males of vested interests in the plan illegally accrued to the benefit of remaining unretired participants in the plan.

The record does not disclose the dates between July 2, 1965, and December, 1970, when other early retirements by males resulted in similarly illegal discriminatory forfeitures of vested interests. Neither does the record disclose sufficient information from which the court can determine the amount by which either Chastang or Ugiansky had

his vested interest in the plan increased in value by an illegal discriminatory forfeiture of someone else's vested interest subsequent to July 2, 1965. It is obvious that the value of the vested interest of Ugiansky in the retirement fund was increased by some amount as a result of the prior forfeitures of one-half of the vested interest of Chastang. There is not sufficient evidence in the record, however, for the court to determine the amount thereof. While it would ordinarily be appropriate for the recovery of both Chastang and Ugiansky to be reduced by the sum by which their respective vested interests were enhanced as a result of prior illegal forfeitures of the vested interests of other persons after July 2, 1965, the burden of proof to mitigate or reduce damages rests upon the defendants, the wrongdoers in this case. *See* Associated Stations, Inc. v. Cedars Realty and Development Corp., 454 F.2d 184 (4th Cir. 1972); 25A C.J.S. Damages § 144, pp. 21–23. This burden the defendants did not meet.

## III

Plaintiffs also seek a reasonable attorney's fee as part of the costs of this action under the provisions of Title VII, § 706(k) of the Act, 42 U.S.C. § 2000e–5(k). That section of the Act permits a court, in its discretion, to allow the prevailing party a reasonable attorney's fee as part of the costs. The Fourth Circuit has held repeatedly that attorneys' fees are to be imposed in Title VII cases, not only to penalize defendants for pursuing frivolous arguments, but also to encourage individuals to vindicate the strongly expressed Congressional policy against *racial* discrimination. Lea v. Cone Mills Corporation, 438 F.2d 86 (4th Cir. 1971); Robinson v. Lorillard Corporation, 444 F.2d 791 (4th Cir. 1971); Moody v. Albemarle Paper Company, 474 F.2d 134 at 142 (4th Cir. 1973). Those cases extended to actions brought under Title VII the rationale of the United States Supreme Court, expressed in Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19

L.Ed.2d 1263 (1968), in relation to Title II of the Civil Rights Act, 42 U.S.C. § 2000a et seq.

The rationale of the Supreme Court in Newman v. Piggie Park Enterprises, *supra*, was ·that Title II, dealing with racial and religious discrimination in places of public accommodation, in 'many instances would be required to be enforced through the suits of private persons, acting as "private attorneys general." The Court said:

> "When a plaintiff brings an action under that Title, he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorney's fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II.

> "It follows that one who succeeds in obtaining an injunction under that Title should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." 390 U.S. at 402, 88 S.Ct. at 966.

There are several differences between Title II and Title VII. In Title VII, as opposed to Title II, sexual discrimination is made unlawful. Similarly, in Title VII, as opposed to Title II, a successful plaintiff may obtain damages and is not limited solely to injunctive relief. In Lea v. Cone Mills Corporation, *supra*, Robinson v. Lorillard Corporation, *supra*, and Moody v. Albemarle Paper Company, *supra*, the Title VII actions there involved were held to justify the issuance of injunctions to eliminate ra-

cial discrimination, although it is true, in the *Cone Mills* case, the claim of discrimination was in addition based upon the plaintiffs' sex. In those cases, therefore, it is easy to see how the rationale of Newman v. Piggie Park Enterprises, *supra*, would be applicable.

■ In the present case, however, no injunction has been sought or obtained. The suit, filed after the retirement plan was amended to eliminate the discriminatory provision relating to retirement, benefits the interests only of Chastang and Ugiansky. Furthermore, under the judgment to be entered in this case Chastang and Ugiansky will receive substantial moneys from which they could well afford to pay reasonable attorney's fees. Lastly, and perhaps most importantly, the award of attorney's fees in this case would not penalize Flynn and Emrich Company or the trustees personally, but would, instead, penalize the current participants in the retirement plan by diminishing the value of their interests in the plan to the extent that funds of the retirement plan were required to be paid to Chastang and Ugiaznsky as attorney's fees. In short, there are special circumstances here which would render an award of attorney's fees unjust and would not serve the interests expressed by the Supreme Court in Newman v. Piggie Park Enterprises, *supra*, as the reasons for the legislative grant of authority to this court, in its discretion, to award such attorneys' fees.

## IV

The plaintiffs also claim the right to prejudgment interest on the amount of their vested interest in the retirement plan which was illegally forfeited. Title VII is silent as to the award of interest by a court. The Supreme Court, in Rodgers v. United States, 332 U.S. 371, stated at p. 373, 68 S.Ct. 5 at p. 7, 92 L. Ed. 3 (1947):

> "[T]he failure to mention interest in statutes which create obligations has not been interpreted by this Court as manifesting an unequivocal congres-

sional purpose that the obligation shall not bear interest. . . . For in the absence of an unequivocal prohibition of interest on such obligations, this Court has fashioned rules which granted or denied interest on particular statutory obligations by an appraisal of the congressional purpose in imposing them and in the light of general principles deemed relevant by the Court."

The obligation created by Title VII is, in this instance, to ignore the sex of an employee ". . . with respect to his compensation, terms, conditions, or privileges of employment . . . ." 42 U.S.C. § 2000e–2(a)(1). The award of damages allowed by Title VII in this instance ". . . is not a penalty imposed as a sanction for moral turpitude; it is compensation for the tangible economic loss resulting from an unlawful employment practice. Under Title VII the plaintiff . . . is entitled to compensation for that loss, however benevolent the motives for its imposition." Robinson v. Lorillard Corporation, *supra*, 444 F.2d at 804. Courts generally, and the Fourth Circuit in particular, have increasingly tended to treat interest as part of the just compensation due to an injured party. N. L. R. B. v. Globe Products, 322 F.2d 694 (4th Cir. 1963); Robert C. Herd & Company v. Krawill Machinery Corp., 256 F.2d 946 (4th Cir. 1958); Brennan v. City Stores, Inc., 479 F.2d 235 (5th Cir. 1973); Tidwell v. American Oil Co., 332 F.Supp. 424, 437 (D.Utah 1971).

■ Accordingly, prejudgment interest will be awarded to the plaintiffs at the rate of 6% from October 21, 1968, in the case of Mr. Chastang and from May 21, 1969, in the case of Mr. Ugiansky. (See PX 65 and PX 56).

Plaintiffs' counsel is directed to compute the interest and prepare an appropriate final order in accordance with the views expressed in this opinion and to present the same to the court within 15 days of this date after giving appropriate opportunity to counsel for defendants to review and comment upon the same.

## SUPPLEMENTAL MEMORANDUM

■ A question has arisen as to whether the judgment in this case should be solely against the trustees of the retirement fund in their fiduciary capacities or, in addition, against the Flynn and Emrich Company as well. Counsel for defendants suggests that the judgment should not be against Flynn and Emrich Company, but should be solely against the retirement fund. The court does not agree.

While as between the retirement fund and the company it would appear that the fund must bear the loss [1] since the company has no contractual obligation to make payments to the fund, this suit asserts a claim by two employees (or former employees) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000–e et seq. The fund was not the employer of the plaintiffs; the defendant company, Flynn and Emrich, was. As such the liability to the plaintiffs imposed by Title VII, for the reasons set forth in the prior opinions herein,[2] extends to Flynn and Emrich Company as well as to the retirement fund itself as an agent of the company within the meaning of the Act.

1. Of course, the allocation of the loss between the fund and the company is not the subject of this suit and has not been decided by this court under the pleadings.

2. See particularly 365 F.Supp. 957, 967 (D. Md.1973).