Pauline M. HOWARD, Plaintiff,

v.

WARD COUNTY et al., Defendants, and Third-Party Plaintiffs,

v.

Olaf HAALAND, Third-Party Defendant.

No. A4–75–45.

United States District Court,
D. North Dakota,
Northwestern Division.

July 30, 1976.

Wallace D. Berning, Minot, N. D., Robert A. Feder, Fargo, N. D., for plaintiff.

Richard B. Thomas, State's Atty., Steven C. Lian, Minot, N. D., for defendants.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

The Plaintiff, Pauline Howard, is a deputy sheriff of Ward County, North Dakota, who contends that the County, acting through its Board of Commissioners, has discriminated against her because of her sex, in violation of Title VII of the Civil Rights Act of 1964 (hereinafter Title VII), as amended, 42 U.S.C. § 2000e et seq., and the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (1965). Plaintiff contends that the Board has failed to pay her a salary commensurate with that of male deputies in the Sheriff's Department who do substantially equal work. Plaintiff prays that the County and its Board of Commissioners be enjoined from failing to pay her the same salary as male deputies who do equal work and from otherwise discriminating against her on the basis of her sex. In addition, Plaintiff seeks to recover back pay, liquidated damages, attorneys' fees, and costs. The County and its Board of Commissioners deny that they have discriminated against Plaintiff on account of her sex and have filed a third-party action against Sheriff Olaf Haaland. In the third-party action, the Defendants contend that they are limit-

ed, under N.D.C.C. § 11–10–11, to fixing the number and salaries of Sheriff's deputies, and that personnel employment practices are solely within the discretion of the Sheriff and beyond their control. The Sheriff answers that he has done everything within his power to rectify any discrimination against Plaintiff. Further, the Sheriff counterclaims against the County and its Commissioners for an award of attorney's fees.

Trial to the Court took place July 14–16, 1976, at Minot, North Dakota. The Court now makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

This Court has jurisdiction of the claim under the Equal Pay Act pursuant to 29 U.S.C. § 216(b) (1976 Supp.) and 28 U.S.C. § 1337 (1962), see *Freudenberg v. Harvey*, 364 F.Supp. 1087, 1090 (E.D.Pa.1973), and of the claim under Title VII pursuant to 42 U.S.C. § 2000e–5(f)(3) (1974).

Plaintiff has been employed as a deputy sheriff in Ward County under Sheriff Haaland since January of 1962. She started as a so-called "office deputy" with responsibilities in the civil area; also, from the beginning she was expected to assist in arrest and custody problems involving females and juveniles, whether under the criminal or mental health laws.

As her workload has increased, Plaintiff has attended numerous schools and seminars and received training in many different specialties. She has been trained in firearms, hand-to-hand combat, arrest procedures, constitutionality of search and seizure, domestic quarrels, civil process, criminal process, preservation of evidence for trial, admissibility of evidence, techniques of testifying in open court, interviewing, techniques in criminal investigation, and breathalyzer. The training in these specialties has been routinely utilized by the Plaintiff in the day-to-day performance of her job.

The Plaintiff is in charge of the civil side of the Sheriff's Office. This side is responsible for serving civil process, executing lev-

ies, and so on. Plaintiff is responsible for training other deputies in the art of civil process and has taught civil process at law enforcement seminars throughout the state. Plaintiff, with a rank of lieutenant, supervises Captain Taylor, Lieutenant Anderson, and Sergeant Swann in serving civil process. The Sheriff estimates that 90% of the total work of these three men is taken up in civil matters—with only 10% taken up in criminal matters.

As mentioned before, however, Plaintiff's job has expanded beyond civil process—office administration duties. She has administered well over 100 breathalyzer tests at all hours of the day and night. She has routinely taken female mental patients into custody and transported them to the state mental hospital at Jamestown. (Two male deputies are normally sent to pick up a male patient, and Plaintiff and one male deputy to pick up a female patient.) Plaintiff has transported female prisoners, and is expected to handle field work in juvenile delinquency and child-molestation cases. She is expected to investigate criminal matters, particularly with respect to crimes involving female suspects or victims.

In addition to her administrative and supervisory duties in the office, Plaintiff's duties over the years have expanded into virtually all the activities of so-called "field deputies"—with the exception of traffic control. Her work has exposed her to the same or similar hazards as the other deputies.

The Sheriff currently has 14 deputies—13 male and one female. The deputies are ranked as follows: 1 Colonel (Chief Deputy), 1 Major, 1 Captain, 2 Lieutenants, 5 Sergeants, and 4 Patrolmen-Recruits.

Colonel Heilman, the Chief Deputy, is second in command. His work is virtually all administrative. Major Wittmayer is third in command and is in charge of the criminal side of the office. The Plaintiff, Lieutenant Howard, is fifth in command and is in charge of the civil side of the office. Captain Taylor, who is fourth in command, performs duties on both the

criminal and civil sides. When on the criminal side, he is under Major Wittmayer, and when on the civil side, he is under Lieutenant Howard. Lieutenant Anderson, sixth in command, also performs on both the civil and criminal sides, though approximately 90% of his work is on the civil side.

Thus, the Plaintiff has been given the rank of Lieutenant by the Sheriff. She is ranked fifth in command—below Captain Taylor and above Lieutenant Anderson. However, the Sheriff candidly admitted at trial that the only reason Plaintiff is not ranked Major is that the County Commissioners have in effect refused to recognize her even as a Lieutenant. Thus, the Sheriff's ranking of Plaintiff as a Lieutenant and fifth in command is conservative at best. Yet, out of the Sheriff and his 14 deputies, Plaintiff, who is third in seniority and no lower than fifth in the chain of command, is fifteenth in salary.

The Sheriff has long felt that Plaintiff has not been paid a salary on an equal basis as male deputies. And, since at least 1972, he has attempted to persuade the County Commissioners to pay Plaintiff a salary commensurate with her position, but so far to no avail. The Sheriff presents his annual budget requests to the Commissioners—broken down, as the Commissioners have required, into specific salary requests for each deputy. Although the Sheriff's requests for male deputies have routinely been reduced, the Commissioners have consistently held Plaintiff's salary at a level proper for one engaged only in office clerical and administrative work.

## HAS THERE BEEN A VIOLATION OF THE EQUAL PAY ACT?

■ The Equal Pay Act of 1963 is a part of the Fair Labor Standards Act of 1938 (hereinafter FLSA), as amended, 29 U.S.C. § 201 et seq. In a very recent decision the United States Supreme Court has found that the 1974 amendments to the FLSA which extended the Act's definition of "employers" to include states and political subdivisions of states are beyond the power of Congress under the Commerce Clause. *The*

*National League of Cities v. Usery,* —— U.S. ——, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Since the Equal Pay Act is part of the FLSA and takes its definition of "employer" therefrom, it follows that the Defendants are not "employers" within the coverage of the Equal Pay Act.

It is true that, in a pretrial order dated May 3, 1976, counsel for all the parties in this lawsuit have agreed that certain "facts" may be accepted as established for purposes of this case. Among the "facts" is the proposition that "Defendants are the employer of Plaintiff within the meaning of 42 U.S.C. § 2000e(b) and with (sic) the meaning of 29 U.S.C. § 203(d)."

■ "Courts generally hold stipulations, agreements, or statements of counsel made at the pretrial conference binding for purposes of trial." 6 Wright & Miller, *Federal Practice and Procedure*: Civil § 1527, pp. 600–01 (1971). However, while a "stipulation of material facts is ordinarily proper," *Minneapolis Brewing Company v. Merritt,* 143 F.Supp. 146, 149 (D.N.D.1956), a district court is "not . . . obliged to accept, as absolutely controlling, a stipulation of the parties as to a question of law or a mixed question of law and fact." *Spangler v. Pasadena City Board of Education,* 519 F.2d 430, 434–35 n.4 (9th Cir. 1975), vacated and remanded on other grounds, —— U.S. ——, 96 S.Ct. 2697, 48 L.Ed.2d —— (1976). See also *Estate of Sanford v. Commissioner,* 308 U.S. 39, 51, 60 S.Ct. 51, 84 L.Ed. 20 (1939); *Swift & Co. v. Hocking Valley Ry.,* 243 U.S. 281, 289, 37 S.Ct. 287, 61 L.Ed. 722 (1917), and *Gunn v. U. S.,* 283 F.2d 358, 364 (8th Cir. 1960). In the light of this authority, I do not treat the stipulation of counsel as controlling.

"The original Fair Labor Standards Act passed in 1938 specifically excluded the States and their political subdivisions from its coverage." *The National League of Cities v. Usery,* supra, —— U.S. ——, 96 S.Ct. at 2467. However, "in 1966, with the amendment of the definition of employers under the Act, the exemption heretofore extended to the States and their political subdivisions was removed with respect to

employees of state hospitals, institutions, and schools." *Id.*, at ——, 96 S.Ct. at 2467. The validity of this amendment was upheld in *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). In 1974 Congress again broadened the coverage of the Act. With the 1974 amendments, Congress "entirely removed the exemption previously afforded States and their political subdivisions, substituting only the Act's general exemption for executive, administrative, or professional personnel, 29 U.S.C. § 213(a)(1), which is supplemented by provisions excluding from the Act's coverage those individuals holding public elective office or serving such an officeholder in one of several specific capacities. 29 U.S.C. § 203(e)(2)(C)." *The National League of Cities v. Usery*, supra, —— U.S. at ——, 96 S.Ct. at 2468. The 1974 amendments were challenged in *The National League of Cities v. Usery*, supra, and in that case the United States Supreme Court overruled *Maryland v. Wirtz*, supra, and held that "insofar as the challenged amendments operate to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions, they are not within the authority granted Congress by Art. I, § 8, cl. 3 [the Commerce Clause, under whose authority the FLSA was passed (see 29 U.S.C. § 202(b)]." *Id.*, at ——, 96 S.Ct. at 2474.

■ Consequently, since the Defendants are not "employers" within the meaning of the Equal Pay Act, the Plaintiff can have no recovery under this Act *per se.*

## HAS THERE BEEN A VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964?

The first question, again, is one of coverage under Title VII.

■ Pertinent definitions under Title VII are found in 42 U.S.C. § 2000e (1974). It is apparent from the definitions found in 42 U.S.C. § 2000e(a), (b), and (h) that Ward County, as a political subdivision of the state of North Dakota, and the Board of Commissioners, as an agent of the County, are "employers" within the meaning of Ti-

tle VII. And the coverage of state and local governments under Title VII is within Congressional power under the Fourteenth Amendment, the basis upon which Congress extended coverage to these entities. *U. S. v. City of Milwaukee*, 395 F.Supp. 725, 727–28 (E.D.Wis.1975).

■ Less apparent is whether the Plaintiff is an "employee" within the meaning of Title VII. In the pretrial order counsel have stipulated that "Plaintiff is an employee of the Sheriff's Office of Ward County and is an employee within the meaning of 42 U.S.C. § 2000e(f) and 29 U.S.C. § 203(d)." Again, this is a stipulation of mixed fact and law, which I am not bound to regard as controlling. See discussion, supra. This same question was submitted to the Court by the Defendants' motion to dismiss dated January 29, 1976, which was denied on March 12, 1976. However, since the Defendants have raised the question again in their motion for summary judgment at the close of Plaintiff's evidence, I have decided to state my views more fully.

Prior to the 1972 amendments to Title VII, the term "employer" was defined to specifically exclude states and their political subdivisions. The March, 1972 amendments removed this specific exclusion and rendered these entities subject to Title VII. See *U. S. v. City of Milwaukee*, supra, 395 F.Supp. at 727–28. Also see the historical note following 42 U.S.C. § 2000e. However, the 1972 amendments also contained language excluding from coverage under Title VII certain employees of state and local governments. That exclusion is found in 42 U.S.C. § 2000e(f) (1974), which states:

"The term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the

exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision."

This definition is an outstanding example of bad draftsmanship, being a definition subject to an exception, which exception is subject to an exception.

The legislative history of this provision, however, indicates that Congress intended that this exclusion be construed very narrowly.

"It is the intention of the conferees to exempt elected officials and members of their personal staffs, and persons appointed by such elected officials as advisors or to policymaking positions at the highest levels of the departments or agencies of State or local governments, such as cabinet officers, and persons with comparable responsibilities at the local level. *It is the conferees intent that this exemption shall be construed narrowly.* Also, all employees subject to State or local civil service laws are not exempted. [Emphasis added.]" *Joint Explanatory Statement of Managers at the Conference on H.R. 1746,* 1972 U.S.Code Cong. & Adm.News, p. 2179, at p. 2180.

"Section 701(f)—This subsection is intended to exclude from the definition of 'employee' as used in Title VII those persons elected to public office in any State or political subdivision. The exemption extends to persons chosen by such officials to be on their personal staff, appointees of such officials to be on their personal staff, appointees of such officials on the highest policymaking levels such as cabinet members or other immediate advisors of such elected officials with respect to the exercise of the Constitutional or legal powers of the office held by such elected officer. The exemption does not include civil service employees. *This exemption is intended to be construed very narrowly* and is in no way intended to establish an overall narrowing of the expanded coverage of State and local governmental employees as set forth in section 701(a) and (b) above. [Emphasis added.]" *Section-by-Section Analysis of H.R. 1746 as Reported to the Senate on March 6, 1972,* 118 Cong.Rec. at 7166–67.

■ Under Article X, Section 173 of the North Dakota Constitution, the Sheriff is an elected county official. Although it is true that Plaintiff is not protected by state civil service laws, this fact alone does not bring her within the exclusion of 42 U.S.C. § 2000e(f).

■ Except for emergency situations under N.D.C.C. § 11–15–02 (1976), the Board of County Commissioners—not the Sheriff—determines the number of deputies a Sheriff can have. See N.D.C.C. § 11–10–11 (1976). In fact, Sheriff Haaland testified that the Ward County Commissioners will allow the Sheriff to employ additional deputies only after they have authorized such employment by resolution. And under North Dakota law a deputy sheriff is an employee of the state or county, and not of the sheriff. *Scofield v. Wilcox,* 33 N.D. 239, 156 N.W. 918 (1916). So it is clear that a sheriff has only limited discretion in the selection of deputies in North Dakota. In addition, assuming arguendo that deputies are "chosen" by the sheriff, it would be incorrect to characterize a deputy as being on the sheriff's "personal staff."

■ So, construing the language of 42 U.S.C. § 2000e(f) narrowly, I find that Plaintiff was not "chosen by [the Sheriff] to be on [his] personal staff." Nor can I find that the Plaintiff is "an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the [Sheriff's] office."

■ Those exclusions are aimed at persons such as members of a governor's cabinet or a mayor's personal secretary (provided they are not protected by state civil service), rather than at deputy sheriffs. But see *Kyles v. Calcasieu Parish Sheriff's Department,* 395 F.Supp. 1307 (W.D.La. 1975) (dealing with a deputy sheriff under

Louisiana law), and *Wall v. Coleman*, 393 F.Supp. 826 (S.D.Ga.1975) (dealing with assistant district attorneys under Georgia law).

Therefore, I find that the Plaintiff is an "employee" within the meaning of Title VII.

■ Has the Plaintiff, contrary to Title VII, been the victim of employment discrimination because of her sex? Title 42 U.S.C. § 2000e–2(a)(1) (1974) provides that it is an unlawful employment practice for an employer

". . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."

And 42 U.S.C. § 2000e–2(h) (1974) provides:

". . . It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29 [The Equal Pay Act.]"

So, differentiations permitted by the Equal Pay Act are approved, by reference, in Title VII cases.

■ And, "[t]he sex discrimination provisions of Title VII . . . must be construed in harmony with the Equal Pay Act . . . ." *Orr v. Frank R. MacNeill & Son, Inc.*, 511 F.2d 166, 170 (5th Cir.), *cert. denied*, 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975). In order to determine whether Plaintiff has been discriminated against because of her sex in violation of Title VII with respect to her compensation, then, I must apply the Equal Pay Act standards.

Of course, employee coverage is still dictated by Title VII and is not limited by the definitions found in the FLSA. See 29

C.F.R. § 1604.8(a) (1975). If I find that the standards of the Equal Pay Act have been violated, I must look to the remedies and the statute of limitations found under Title VII, rather than the slightly different remedies and statute of limitations found under the FLSA. [Compare 42 U.S.C. § 2000e–5(g) and (k) (1974) with 29 U.S.C. § 216(b) (1976 Supp.), § 217 (1965), § 255 (1975), § 256 (1975), and § 260 (1975), and 29 C.F.R. § 800.166(b) (1975).]

The Equal Pay Act provides in part as follows:

"No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, that an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee." 29 U.S.C. § 206(d)(1) (1965).

The question is whether the County Commissioners paid Plaintiff less than any of the male deputies "for equal work on jobs the performance of which requires equal *skill, effort* and *responsibility*, and which are performed under similar working conditions . . . ."

■ The official interpretation of the Department of Labor with respect to the application of the Equal Pay Act are found at 29 C.F.R. Part 800 (1975). And it is

**504**

axiomatic that "interpretive bulletins of a governmental department charged with the administration of a federal law should be given weight and serve as a guidance to the courts." *Hodgson v. Security National Bank of Sioux City*, 460 F.2d 57, 59 (8th Cir. 1972).

"Skill includes consideration of such factors as experience, training, education, and ability." 29 C.F.R. § 800.125. "Effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job." 29 C.F.R. § 800.127. "Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R. § 800.129.

With regard to "skill," Plaintiff is third in seniority in the Sheriff's Office—behind the Sheriff and his Chief Deputy—and fifth in number of hours of training and education in law enforcement—behind the Sheriff, Chief Deputy Heilman, Major Wittmayer, and Captain Taylor. With respect to "effort," Plaintiff has spent many extra hours assisting local police in Minot and has been on call all hours of the night to give breathalyzer tests. The Sheriff has characterized Plaintiff's efforts in her job to be greater than those of the male deputies. With respect to "responsibility," Plaintiff is in charge of the civil side of the office and supervises all male deputies when they are performing civil functions.

Chief Deputy Heilman characterized Plaintiff's skill, effort, and responsibility as equal to or greater than that of male deputies. Major Wittmayer, Lieutenant Anderson, Sergeant Gietzen, and Patrolman Kukowski characterized Plaintiff's skill and effort as equal to that of male deputies, and her responsibility as greater than those of lesser rank.

■ The County Commissioners explain their failure to put Plaintiff at a salary level equal to even the lowest-paid male deputy by giving essentially two reasons. They are:

1.  If Plaintiff is given such a raise, female office deputies in the Register of Deeds, Clerk's, and Auditor's offices will claim they are entitled to raises.
2.  Plaintiff, being classified as an "office deputy," should not be paid at the same rate as "field deputies."

Neither of these reasons is sufficient to counter the Plaintiff's claim that she is not receiving equal pay for equal work.

■ If the Commissioners fear that, as a result of Plaintiff's receiving a salary equal to male deputies, females in other County offices will demand equal pay as men in their offices doing equal work, clearly, this fear, however well-founded, is not a basis upon which to discriminate against the Plaintiff. One female cannot be denied her rights simply because other females may demand theirs. If, on the other hand, the Commissioners fear that other female County workers will be entitled to a raise simply because the Plaintiff receives one, this fear is unfounded. Any raise which the Plaintiff receives could have no effect on the County's obligation to raise the salaries of other female workers who are not performing jobs requiring "equal skill, effort, and responsibility" as the Plaintiff or who are not performing jobs "under similar working conditions . . ." 29 U.S.C. § 206(d)(1).

■ Finally, the fact that Plaintiff may have been or is now "classified" as an "office deputy" is only meaningful to the extent that her work as office deputy is not a job requiring equal effort, skill, and responsibility as that of a field deputy. "The consideration of equal pay standards is based on actual job requirements and performance, not on-job classifications or titles." *Peltier v. City of Fargo*, 533 F.2d 374, 377 (8th Cir. 1976). See also 29 C.F.R. § 800.121. Regardless of whether Plaintiff is classified as an "office deputy," her actual job requirements and performance require her to be out "in the field" investigating crime, handling mentals and juveniles, and transporting prisoners.

■ Clearly, then, the *standards* under the Equal Pay Act have been violated—and the evidence shows they have been violated since at least the fiscal year beginning July 1, 1972. And, therefore, Title VII has been violated. Title VII prohibitions against the use of compensation differentials to effect discriminations based on sex are broader, if anything, than the prohibitions of the Equal Pay Act.

## REMEDIES UNDER TITLE VII

Title 42 U.S.C. § 2000e–5(g) (1974) provides:

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.  . . ."

■ "Notwithstanding the provision in Title VII allowing injunctive relief and back pay only where the respondent has intentionally engaged in unlawful practice, 42 U.S.C. § 2000e–5(g), courts have established that proof of discrimination does not require proof of intent to discriminate. All that is required is that the employment practice not be accidental." *Rogers v. International Paper Company,* 510 F.2d 1340, 1344 (8th Cir.), *modified,* 526 F.2d 722 (8th Cir. 1975).

In *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), the Supreme Court delineated the standards which a federal district court should follow in deciding whether to award back pay. It said:

"  . . .  [G]iven a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Id.,* 422 U.S. at 421, 95 S.Ct. at 2373.

A showing of bad faith on the part of the employer is not necessary, since this "would read the 'make whole' purpose right out of Title VII.  .  .  .  Title VII is not concerned with the employer's 'good intent or absence of discriminatory intent' for 'Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation.'" *Id.,* 422 U.S. at 422, 95 S.Ct. at 2374.

In a footnote the Court cautioned:

"It is necessary, therefore, that if a district court does decline to award backpay, it carefully articulate its reasons." *Id.,* 422 U.S. at 421 n. 14, 95 S.Ct. at 2373.

This is, of course, fully consistent with the biblical mandate that "a laborer is worthy of his hire." The people of the County, having employed and received the field services of this deputy, must compensate her fairly for them.

■ Concerning the time span for the allowance of back pay, 42 U.S.C. § 2000e–5(g) provides that "[b]ack pay liability shall not accrue from a date more than two years prior to the filing of a charge with the [Equal Employment Opportunity] Commission." Since Plaintiff filed her charges with the Commission on January 17, 1975, she can recover back pay from January 17, 1973, to the date of judgment.

■ As for the amount of back pay, the Plaintiff is entitled to recover "the difference between plaintiff's actual earnings for the period and those which [she] would have earned absent the discrimination of defendants." *Waters v. Wisconsin Steel Works,* 502 F.2d 1309, 1321 (7th Cir. 1974).

■ In estimating the amounts Plaintiff would have received absent sexual discrimination, for the fiscal years 1972–73, 1973–

74, and 1974–75, I have used the salaries paid to the male deputies who had the same rank as Plaintiff. However, for the fiscal year 1975–76, I have used the salary paid to Major Wittmayer, because of the uncontroverted evidence that the only reason the Sheriff had not ranked Plaintiff Major was that the Commissioners would not agree even to a Lieutenant's salary for her. Since no evidence was submitted on salaries for the fiscal year beginning July 1, 1976, I make no estimate of what the Plaintiff should have been paid during the month of July, 1976.

My computation of the back pay owing to Plaintiff follows:

| TIME PERIOD | ESTIMATE OF EARNINGS PLAINTIFF SHOULD HAVE RECEIVED | EARNINGS PLAINTIFF ACTUALLY RECEIVED | DIFFERENCE OF COLUMNS 2 & 3 | BACK PAY DUE PLAINTIFF | |
|---|---|---|---|---|---|
| January 17, 1973 – June 30, 1973 | $ 680/month | $ 545/month | $ 135/month | $ 733.50 | (monthly rate × 5 13/30) |
| July 01, 1973 – June 30, 1974 | $ 8,520/year | $6,900/year | $1,620/year | $1,620.00 | |
| July 01, 1974 – June 30, 1975 | $ 9,457.20/year | $7,659/year | $1,798.20/year | $1,798.20 | |
| July 01, 1975 – June 30, 1976 | $11,208.84/year | $8,424.96/year | $2,783.88/year | $2,783.88 | |
| | | | | $6,935.58 | |

■■■ Plaintiff stated that if she could not recover both, she preferred liquidated damages to interest. But she cannot recover liquidated damages because that remedy is available only under the FLSA—see 29 U.S.C. § 216(b) (1976 Supp.)—and her claim under that Act has been denied. However, Plaintiff is entitled to prejudgment interest at the rate of 6% per annum from the respective dates on which the Plaintiff should have received her back wages. The Eighth Circuit has allowed such prejudgment interest with respect to back pay awards under the FLSA, see *Hodgson v. American Can Company,* 440 F.2d 916, 921–22 (8th Cir. 1971), and *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179, 183 (8th Cir. 1975), and the interest award serves at least in part to compensate for a present value of past due sums. Just as the purpose of an award of back wages under the FLSA "is to compensate the employees for the loss sustained because of the wrongful withholding of wages," *Hodgson v. American Can Company,* supra, 440 F.2d at 922, one purpose of back pay awards under Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody,* supra, 422 U.S. at 418, 95 S.Ct. at 2372. Thus, Plaintiff is entitled to prejudgment interest at 6% per annum from the various due dates. See also *Chastang v. Flynn and Emrich Company,* 381 F.Supp. 1348, 1351–52 (D.Md.1974), and *Inda v. United Air Lines, Inc.,* 405 F.Supp. 426, 435 (N.D.Cal. 1975).

■■■ Besides back pay and prejudgment interest, the Plaintiff is entitled to an injunction requiring the County Commissioners to cease discriminating against her because of her sex with respect to her compensation. See 42 U.S.C. § 2000e–5(g). In addition, since there are no "special circumstances [which] would render such an award unjust," *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), the Plaintiff, as the prevailing party, is entitled to "a reasonable attorney's fee as part of the costs [of the action]." 42 U.S.C. § 2000e–5(k). See *Albemarle Paper Co. v. Moody,* supra, 422 U.S. at 415, 95 S.Ct. 2362.

## THE THIRD PARTY ACTION

■■ In their third-party action against the Sheriff, the Commissioners allege that "employment practices relating to person-

nel are solely within the discretion . . of the Sheriff, . . . and are beyond the control of the Defendants." Yet they admit, in that pleading, that under N.D.C.C. § 11–10–11 they have the authority to fix the salaries of the Sheriff's deputies. Since the Sheriff is not responsible for the discrimination which has been practiced against the Plaintiff, the third-party complaint will be dismissed.

### THE SHERIFF'S COUNTERCLAIM

The Sheriff counterclaims against the Commissioners for attorney's fees expended by him in defending the third-party action. He makes the claim under 42 U.S.C. § 2000e–5(k) and N.D.C.C. § 44–08–11.

Title 42 U.S.C. § 2000e–5(k) (1974) provides that "[i]n any action or proceeding under this subchapter [Title VII] the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ." I can find no case law on whether a prevailing third-party defendant is encompassed within the meaning of this statute.

A third-party action is a proceeding distinct from the main action, in the nature of indemnity or contribution. It is used by a defendant to bring another party into the lawsuit "who is or may be liable to him for all or part of the plaintiff's claim against him." Rule 14(a) of the Federal Rules of Civil Procedure. Consequently, I do not think a third-party complaint in a Title VII suit is an "action or proceeding under [Title VII]" calling for the award of attorney's fees to the prevailing party.

As for the Sheriff's claim for attorney's fees under N.D.C.C. § 44–08–11, this claim was first presented in an amended pleading of the Sheriff filed on July 7, 1976. Since counsel for the County Commissioners demanded the full 20-day period in which to answer this new claim, evidence thereon was not taken at trial. The 20-day period has now expired without further filings. Counsel will prepare and file appropriate motions on this issue, and a supplemental order, if necessary, will be filed.

To summarize,

IT IS ORDERED:

1. That the Defendants' motion for summary judgment made at the close of the Plaintiff's case is *denied;*
2. That Ward County and its Board of Commissioners shall pay the Plaintiff $6,935.58 in back wages together with prejudgment interest at the rate of 6% per annum from the respective dates on which the Plaintiff should have received the wages;
3. That Ward County and its Board of Commissioners are permanently enjoined from discriminating against Plaintiff because of her sex with respect to her compensation;
4. That Plaintiff is entitled to the recovery of reasonable attorneys' fees;
5. That the third-party complaint is dismissed;
6. That the Sheriff's claim for attorney's fees pursuant to 42 U.S.C. § 2000e–5(k) is dismissed.

If counsel for the Plaintiff and the Defendants cannot come to a stipulation as to a reasonable amount of attorneys' fees by August 10, 1976, Plaintiff's counsel will thereupon submit an affidavit to the Court as to time spent on the case, and the Court will resolve the issue.

Counsel for the Plaintiff will submit a form of judgment for the main action in conformity herewith.

The problems of attorneys' fees for the Plaintiff and the allowance, if any, of attorney's fees to the Sheriff under N.D.C.C. § 44–08–11 will be resolved as soon as they are presented.