442 F.Supp. 448 (1977)
Lyndall MOLTHAN, M. D., Bernice Torrance, and Dr. Rosalie A. Cohen, Individually and on behalf of all other persons similarly situated
v.
TEMPLE UNIVERSITY  OF the COMMONWEALTH SYSTEM OF HIGHER EDUCATION, and the Board of Trustees of Temple University  of the Commonwealth System of Higher Education.
Civ. A. No. 75-1401.
United States District Court, E. D. Pennsylvania.
December 19, 1977.
*449 Gordon Gelfond, Philadelphia, Pa., for plaintiffs.
Matthew H. Strickler, Philadelphia, Pa., for defendants.

OPINION
LUONGO, District Judge.
This civil rights action arises out of alleged sex discrimination in the employment policies and practices of defendant Temple University. Presently before me are the defendants' motions to strike certain portions of the complaint, Fed.R.Civ.P. 12(f), and for partial summary judgment, Fed.R. Civ.P. 56. For the reasons hereafter stated, I conclude that certain portions of the complaint must be stricken, and that the defendants are entitled to partial summary judgment as to certain claims.
Plaintiffs Lyndall Molthan, Bernice Torrance, and Rosalie A. Cohen filed their complaint on May 15, 1975, on behalf of themselves and all others similarly situated. The complaint alleges discrimination against women "in the hiring, promotion, tenure, salary and placement of women employed *450 or applying for faculty, administrative and professional positions within Temple University," and seeks injunctive and declaratory relief, as well as compensatory damages, under the First and Fourteenth Amendments to the United States Constitution, the 1871 Civil Rights Act (42 U.S.C. § 1983), Executive Order 11,246, the Equal Pay Act (29 U.S.C. § 206(d)), Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e to 2000e-17), and certain Pennsylvania statutes. The plaintiffs have since withdrawn all claims based on the executive order and all claims based on state law. Plaintiffs' Answer to Defendants' Motion to Dismiss (Document No. 25) ¶¶ 7, 9. Jurisdiction is based on 28 U.S.C. §§ 1331(a), 1343(3) and (4), 42 U.S.C. § 2000e-5(f)(3), and the Fourteenth Amendment.
The defendants filed motions to dismiss under Rule 12(b)(6), a motion to strike under Rule 12(f), and, some time later, a motion for partial summary judgment as to plaintiff Molthan. Fed.R.Civ.P. 56(c). The plaintiffs filed a motion for class action certification, which is not presently before me, and an answer and supporting Memorandum of Law With Respect to Defendants' Motions. Many of the issues raised in the defendants' motions have been resolved between the parties, and only two issues remain for disposition in this opinion.
The complaint alleges the following facts. Plaintiff Molthan graduated with honors from Temple University School of Medicine in 1949. From the early 1950's through the late 1960's, she was appointed to progressively higher positions at Temple, "including the dean's appointment as instructor in the Department of Medicine in 1954; a dean's appointment as assistant professor in the Department of Medicine in 1959; a dean's appointment as associate professor in the Department of Medicine in 1965; and a presidential appointment as associate professor in the Department of Medicine in 1966." Complaint ¶ 21. In May of 1969, shortly after she accepted a consultant position at another institution, Molthan was "demoted" to a non-tenured dean's appointment as clinical associate professor. Although this consultant position required only four hours of service per month, and although Molthan continued to work "a full 35-hour week" at Temple University Hospital after she accepted the outside position, Molthan was made a "clinical," or part-time, faculty member (and thus lost her tenure) "allegedly as a consequence" of accepting that position. Id. ¶¶ 24-25, 27. These actions were taken despite the fact that male faculty members earning "comparable and more extensive consultancy salaries" were not demoted to non-tenured positions. Id. ¶ 26. Moreover, "[t]hroughout her association with Temple University, Dr. Molthan has earned a lesser salary than males working in comparable positions in other clinical laboratories." Id. ¶ 22. She is presently "a Clinical Associate Professor in the Department of Medicine, a full time employee of the University, and Administrative head of the [blood] bank and transfusion service of Temple University Hospital." Id. ¶ 6.
The defendants move under Rule 12(f) to strike paragraphs 29 and 30 of the complaint. Rule 12(f) provides:
"Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."
Paragraphs 29 and 30 of the complaint compare plaintiff Molthan's annual salary for 1968 and 1972, respectively, with the salaries earned in those years by blood bank personnel in comparable positions in other area hospitals. The defendants argue, quite properly, that the salaries paid to other employers' personnel have no bearing on Molthan's Equal Pay Act claim inasmuch as the Act plainly applies only to disparities in the salaries paid to two or more employees of a single employer. 29 U.S.C. § 206(d) (1970). With respect to Molthan's claim under the 1871 Civil Rights Act, the issue is *451 not as clear. The salaries paid at other hospitals could conceivably be relevant under some theory of § 1983 liability.[1] Molthan has not, however, asserted any theory of liability that would make this information relevant. The plaintiffs' answer to the defendants' argument, simply stating that the information is "relevant to show that [Molthan's] disparity in pay can only be explained on the basis of her sex,"[2] does not cure the deficiency. Accordingly, I will grant the motion to strike, except with respect to the first sentence of each paragraph, which sets forth only Molthan's salary during the pertinent year.
The defendants have also moved for summary judgment as to Molthan's claims under the Equal Pay Act and Title VII. Rule 56(c) provides in pertinent part:
"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
"The law is clear that one who moves for a summary judgment has the burden of demonstrating that there is no genuine issue of fact." Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 190 F.2d 817, 824 (3d Cir. 1951), quoted with approval in Ettinger v. Johnson, 556 F.2d 692, 696 (3d Cir. 1977). In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion. Bishop v. Wood, 426 U.S. 341, 347 n. 11, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).
The pertinent section of the Equal Pay Act, 29 U.S.C. § 206(d)(1) (1970), reads as follows:
"No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."
In every Equal Pay Act case, "the threshold question always is: are the jobs equal[?]" Walker v. Columbia University, 407 F.Supp. 1370, 1374 (S.D.N.Y.1976). Moreover, "[w]hile the standard of equality is clearly higher than mere comparability yet lower than absolute identity, there remains an area of equality under the Act the metes and bounds of which are still indefinite." Brennan v. City Stores, Inc., 479 F.2d 235, 238-39 (5th Cir. 1973) (footnotes omitted); accord, Angelo v. Bacharach Instrument Co., 555 F.2d 1164, 1170-76 (3d Cir. 1977). See generally 29 C.F.R. §§ 800.119-.132 (1976).
The defendants argue that (1) the Equal Pay Act requires equal pay for "equal *452 work," (2) no other Temple University employee performs a job comparable, much less equal, to Molthan's and therefore (3) summary judgment should be entered for the defendants on Molthan's Equal Pay Act claim. Molthan responds by arguing that her job as Director of the Blood Bank is at least comparable to the jobs of the Director of Hematology and the Director of Pathology. Her argument is concisely stated in her affidavit:
"All three laboratories have been headed by MDs at least since my association with Temple which began in 1945. Each of these positions require equal skills, effort and responsibility in the areas of equipment, staffing, training of personnel and teaching. In those areas the necessary administrative skills are essentially equal and are performed under similar conditions.
At page 56 of my deposition I stated that the Directors of other clinical laboratories share comparable responsibilities and involved [sic] in essentially equal work. I then said that `In certain respects the director of the other clinical laboratory shares certain responsibilities with the director of the Blood Bank such as directing the operation of the laboratory. The Blood Bank is different from other clinical laboratories in that in addition to doing diagnostic work, it provides therapeutic drugs, as the federal government has now designated them, to patients, and therefore the responsibility and the liability are far greater for a director of a blood bank than they are for other clinical laboratories.'
Unfortunately, defense counsel did not pursue this line of questioning, for if he did, I would have explained that this difference involved an additional responsibility which did not detract from the comparability outlined above, but rather showed more clearly how unfair the salary structure was. Although I have additional burdens over and above those of the individuals who head the Hematology and Pathology laboratories, I am not compensated at their levels, but receive a substantially lower salary."
Molthan Affidavit at 1-2.
The defendants, for their part, rely on Molthan's deposition testimony and on the affidavits submitted by the Director of Hematology and by the former Director of Pathology. Keeping in mind that all the evidence must be viewed in the light most favorable to Molthan, those affidavits and depositions establish the following undisputed facts. Prior to 1975, Molthan taught a course or courses in the Hematology Department at Temple's School of Medicine on a regular basis. In addition, she periodically taught courses in such fields as genetics and immunology. In December of 1975, the Pathology Department acquired the responsibility for teaching in regard to diseases of the red cell  the subject-matter of Molthan's course in the Hematology Department. Molthan gave a two-hour lecture on that subject under the auspices of the Pathology Department in December of 1975. Since then, she has not taught any courses in the School of Medicine. She does teach at Temple's College of Allied Health Professions. In addition, she gives informal instruction to junior and senior medical students, as well as to residents in the Departments of Surgery and Medicine, at Temple University Hospital. Molthan Deposition, part I, pp. 42-44, part II, pp. 55, 72-73.
Dr. Renato L. Baserga served as Director of Pathology at Temple University Hospital from 1968 until 1973. During that period, he taught in, and served as Chairman of, the Pathology Department at Temple's School of Medicine. In 1973, Dr. Baserga resigned and was succeeded by Dr. Wallace H. Clark, Jr., who became both Director of Pathology at the Hospital and Chairman of the Pathology Department at Temple's School of Medicine. Baserga Affidavit ¶¶ 2-3.
Dr. H. James Day was an Associate Professor of Medicine at Temple's School of Medicine from 1963 until 1968, when he became a full professor. He served "both as Chairman or Co-Director of the Hematology Section of the Department of Medicine and as Director of the Hematology/Oncology *453 Service." Day Affidavit ¶ 2. Since 1973, he has been Director of all Clinical Laboratory Services at Temple University Hospital, in which capacity he is the administrative supervisor of 125 employees. (The Clinical Laboratory Services include "the Blood Bank, Hematology, Clinical Biochemistry, Microbiology, Immunoscrology [sic], IV," the Blood Drawing Team, and the Laboratory Information System.) Id. ¶ 3. He is presently Director of Hematology. He also serves as Co-Director of the School of Medicine's Thrombosis Research Center. Finally, under the auspices of the Department of Medicine's group practice program, he renders medical services both to inpatients and to outpatients "for a significant amount of time each year." Id. ¶ 4. The income derived from his participation in the group services program is paid over to the University for the benefit of its School of Medicine.
The facts recounted above rather clearly establish that neither Molthan and the Director of Pathology nor Molthan and the Director of Hematology perform "equal work," nor have they done so at any time during the period at issue here. Claims under the Equal Pay Act are subject to a two- or three-year[3] statute of limitations, so that any salary discrimination that occurred prior to May 15, 1972 must be put to one side for the moment. During the period beginning May 15, 1972, Molthan was a Clinical Associate Professor in the Department of Medicine, with the teaching duties described earlier, and Director of the Blood Bank. The two men who served as Directors of Pathology during that period, Dr. Baserga and Dr. Clark, each served as Chairman of the Pathology Department in the School of Medicine. The Director of Hematology during most or all of that period was Dr. Day, who during that period also served as Director of all Clinical Laboratory Services at the hospital and enjoyed the rank of full professor in the School of Medicine.
Standing in opposition to these substantial differences among the three jobs is the plaintiff's assertion that "[e]ach of the positions requires equal skills, effort and responsibility in the areas of equipment, staffing, training of personnel and teaching." No specific facts are alleged in support of this conclusion to demonstrate the existence of a material issue of fact. Fed.R.Civ.P. 56(e). Moreover, "the concept of equality under the Act embraces job content as well as skill, effort, responsibility, and working conditions." Angelo v. Bacharach Instrument Co., 555 F.2d 1164, 1175 (3d Cir. 1977). Apart from the obvious fact that all three positions are directorships of laboratories, no specific facts are alleged that suggest any similarity, much less equality, of job content among the three positions. Finally, assuming arguendo that a factual issue existed as to the comparability of the three directorships per se, any potential for comparability vanishes when the diverse additional responsibilities of the individuals who held those positions are taken into account. Inasmuch as the Act proscribes sex-based discrimination in the salaries paid to "employees . . . [performing] equal work on jobs the performance of which requires equal skill, effort, and responsibility," 29 U.S.C. § 206(d)(1) (1970) (emphasis added), a plaintiff seeking to survive a motion for summary judgment must do more than show that she and another employee each devoted some part of their work week to jobs that are equal, unless, of course, the portion of their pay attributable to that portion of their overall responsibilities can be estimated. In this case, however, the plaintiff does not allege that her responsibilities over and above her directorship are comparable or equal to the "extra" responsibilities of either of the other Directors, and, indeed, the evidence is all to the contrary. Nor does the plaintiff allege that the portion of her salary that reflects her responsibilities as Director of *454 the Blood Bank is lower than the portion of the other Directors' salaries that is attributable to their directorship responsibilities. Under these circumstances, the defendants are entitled to judgment as a matter of law on Molthan's Equal Pay Act claim (Count IV of the complaint).
The defendants also point out that by the terms of § 703(h) of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2(h) (1970), salary disparities that do not violate the Equal Pay Act are not proscribed by Title VII. They argue that they are therefore entitled to summary judgment on Molthan's Title VII claim (Count I of the complaint) insofar as it deals with discrimination in salary. This contention must be carefully considered with respect to three distinct periods of time.
As originally enacted, Title VII was inapplicable to educational institutions. See 42 U.S.C. § 2000e-1 (1970), repealed in part by Equal Employment Opportunity Act of 1972, Pub.L. No. 92-261, § 3, 86 Stat. 103. Effective March 24, 1972, Title VII was amended to encompass educational institutions. Equal Employment Opportunity Act of 1972, Pub.L. No. 92-261, § 14, 86 Stat. 103; see 42 U.S.C. § 2000e-1 (Supp. V 1975). This amendment is nonretroactive,[4] so that any salary discrimination experienced by Molthan prior to that date cannot constitute a violation of Title VII. However, Title VII does authorize relief from present conditions that effectively perpetuate discrimination that occurred prior to March 24, 1972. E. g., Cussler v. University of Maryland, 430 F.Supp. 602, 605 (D.Md. 1977); Rackin v. University of Pennsylvania, 386 F.Supp. 992, 1006 (E.D.Pa.1974). But cf. International Bhd. of Teamsters v. United States, 431 U.S. 324, 353-54, 97 S.Ct. 1843, 1864, 52 L.Ed.2d 396 (1977) ("[A]n otherwise neutral, legitimate seniority system does not become unlawful under Title VII simply because it may perpetuate pre-Act discrimination."). Thus, while summary judgment is appropriate as to any salary discrimination that predated March 24, 1972, such discrimination is not an occurrence that "has no present legal consequences," United Air Lines, Inc. v. Evans, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), but rather an occurrence that at trial may or may not turn out to have present legal consequences.
I have already held that the defendants are entitled to summary judgment on Molthan's Equal Pay Act claim. In so doing, I gave the plaintiff the benefit of the longer (three-year) statute of limitations that governs willful violations of the Act, 29 U.S.C. § 255(a) (1970), and construed her claim to include the period beginning on May 15, 1972, three years before this complaint was filed. Section 703(h) of the 1964 Civil Rights Act provides in pertinent part:
"It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of [the Equal Pay Act]."
42 U.S.C. § 2000e-2(h) (1970).
Implicit in my decision to grant summary judgment is the conclusion that the differentiation of which Molthan complains was "authorized" by, i. e., did not run afoul of, the Equal Pay Act. It follows that the complained-of differentiation cannot be an unlawful employment practice under Title VII, and that the defendants are entitled to summary judgment on Molthan's Title VII claim with respect to any salary discrimination occurring on or after May 15, 1972. 42 U.S.C. § 2000e-2(h) (1970).
It remains to be considered whether Molthan's Title VII claim with respect to any salary discrimination occurring between March 24, 1972, the date Title VII became applicable to educational institutions, and May 14, 1972, the last day of the period for which any Equal Pay Act claim is time-barred, may properly be dealt with on a *455 motion for summary judgment. Section 703(h) of the 1964 Civil Rights Act, quoted earlier, makes it plain that any Title VII claim alleging sex-based discrimination in salary will fail if the complained-of acts do not amount to a violation of the Equal Pay Act. Where the Equal Pay Act issue is ripe for determination on a summary judgment motion, the Title VII issue may be treated in a similar fashion. See generally Howard v. Ward County, 418 F.Supp. 494, 503 (D.N. D.1976).
Applying the Equal Pay Act standards to the period in question, I am convinced that no material issue of fact exists and that the defendants are entitled to judgment as a matter of law. The analysis here is essentially the same as that applied with respect to the period beginning May 15, 1972. First, the plaintiff alleges no specific facts tending to show that the directorships of Hematology, Pathology, and the Blood Bank have equal job content. Second, the plaintiff alleges no specific facts tending to show that the numerous additional responsibilities of the three Directors are comparable, much less equal. Finally, the evidence, viewed in the light most favorable to the plaintiff, demonstrates that the three Directors' overall jobs were dramatically different and scarcely even comparable. In the absence of any particularized allegations that the three Directors received unequal compensation for those portions of their jobs that were equal, the defendants are entitled to judgment as a matter of law. Given this resolution of the Equal Pay Act issue, and given section 703(h) of the 1964 Civil Rights Act, it follows that the defendants are also entitled to summary judgment on Molthan's Title VII claim with respect to any salary discrimination occurring between March 24, 1972 and May 14, 1972, inclusive.
In conclusion, all but the first sentence of paragraphs 29 and 30 of the complaint will be stricken, and summary judgment will be entered for the defendants with respect to Molthan's claim under the Equal Pay Act (Count IV of the complaint) and with respect to Molthan's claim under Title VII (Count I of the complaint) insofar as it relates to salary discrimination.
NOTES
[1] For example, if the plaintiffs in this case alleged and proved that Temple consistently paid its male employees the salaries prevailing in the area for persons in comparable positions, but consistently paid its female employees salaries lower than those prevailing in the area for persons in comparable positions, liability under § 1983 might be established. Information concerning the salaries paid at other institutions would, of course, be relevant under such a theory.
[2] Plaintiffs' Memorandum with Respect to Defendants' Motion, at 3.
[3] Section 255(a) of Title 29 provides that, for a cause of action arising on or after May 14, 1947, suit "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."
[4] Weise v. Syracuse University, 522 F.2d 397, 410-11 (2d Cir. 1975); Cussler v. University of Maryland, 430 F.Supp. 602, 605 (D.Md.1977); Presseisen v. Swarthmore College, 71 F.R.D. 34, 48-49 (E.D.Pa.1976); EEOC v. Tufts Inst. of Learning, 421 F.Supp. 152, 157 (D.Mass.1975).