**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

and

**Josephine McGee, Plaintiff-Intervenor,**

v.

**KALLIR, PHILIPS, ROSS, INCORPORATED, Defendant.**

**Nos. 74 Civil 3234, 75 Civil 401.**

United States District Court,
S. D. New York.

Oct. 8, 1976.

Abner W. Sibal, Gen. Counsel, William L. Robinson, Associate Gen. Counsel, Washington, D. C., Delores Wilson, Asst. Gen. Counsel, Frank J. Tuk, Supervisory Trial Atty., E. E. O. C., Philadelphia Regional Office of Gen. Counsel, Paul J. Gontarek, Trial Atty., Philadelphia, Pa., of counsel; Ronald G. Copeland, Regional Counsel, New York Regional Office, E. E. O. C., New York City, for plaintiff.

O'Dwyer & Bernstien, New York City, for plaintiff-intervenor; Thomas A. Holman, New York City, of counsel.

Davis & Gilbert, New York City, for defendant; Edward S. Patterson, New York City, of counsel.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

This Court, after a trial upon the merits, rendered a decision on July 31, 1975, finding that defendant violated section 704 of the Civil Rights Act of 1964,[1] in that its dis-

---

1. 42 U.S.C. § 2000e–3(a) (as amended). Subsequent citations will be to the United States Code.

charge of plaintiff was in retaliation for her filing a charge of discrimination against defendant, and that plaintiff was entitled to an appropriate judgment.[2] The attorneys for the respective parties were unable to agree on the form of the judgment. Thereupon, on September 30, 1975, this Court ordered a forthwith hearing before the late Magistrate Hartenstine[3] to compute the amount of back pay to which plaintiff was entitled, reduced by the amount that she reasonably could have earned since her discharge. At that time the Court observed that it defied understanding why the lawyers "have not been able to sit down and compute these figures yourselves."[4]

Unfortunately the Court's purpose to obtain an expeditious disposition has not been realized. The post-trial proceedings have been marked by unusual delay, much of it due to obstructive and dilatory conduct by defense counsel and unseemly conduct engaged in by both plaintiff and defense counsel at the hearings before the Magistrate.[5] The testimony on the issues referred to the Magistrate extended over a three-day period, on February 17, 25 and 26, 1976; the transcript exceeds that of the trial record. Much of this is accounted for by petty bickering between counsel and evidential objections that at times bordered on the captious. Further delay was occasioned by submission of proposed findings to the Magistrate.

■ Magistrate Hartenstine died in July 1976 while the matter was sub judice before him. In an attempt to conclude the matter, this Court, on July 30, 1976, referred the proceedings to Magistrate Schreiber to review the record and to report, which he did on August 31, 1976. The parties were invited to express their views upon the Magistrate's recommendations, and following receipt of their comments and objections, the Court heard the parties in support of their respective positions. The defendant, in opposing the recommendations, requests that since Magistrate Schreiber did not hear or observe the witnesses, the matter again be referred to a Magistrate for a de-novo hearing and report on the very issues that were the subject of the reference to Magistrate Hartenstine.

It is now more than fourteen months since this Court rendered its decision that defendant's discharge was retaliatory and unlawful. Plaintiff was discharged on May 15, 1973, more than three years ago. Another reference will serve no purpose except to gain more time for defendant and to delay the judgment day. The original reference was made by this Court out of an abundance of fairness to defendant, since it was evident that upon the trial defendant had failed to counter plaintiff's testimony that despite her best efforts following her discharge all she earned was no more than $1400. There was enough before the Court to have permitted a finding at that time on the award of damages. The reference afforded the defendant a second opportunity to present proof on the issue. There is no need for another reference or additional testimony. The defendant had a full opportunity at the post-trial hearing to examine and cross-examine witnesses and to offer all its proof to negate plaintiff's claim for damages; the record shows it did so. It is time to call a halt to the dilatory tactics of defendant and to award plaintiff the judgment to which she is entitled under the Court's decision.

■ In passing upon a Magistrate's report the Court is required to review the entire record and come to its own determination on the merits of the matter, to avoid

2. *EEOC v. Kallir, Philips, Ross, Inc.*, 401 F.Supp. 66 (S.D.N.Y.1975). Although the suit was brought by the EEOC, *see* 42 U.S.C. § 2000e–5(f)(1), in this opinion "plaintiff" will refer to plaintiff-intervenor Josephine McGee. Familiarity is assumed with the facts set forth in the Court's prior opinion.

3. *See* 28 U.S.C. § 636(b); Rule 35(a), S.D.N.Y. General Rules.

4. Transcript of Hearing, Sept. 30, 1975, at 2.

5. *See, e. g.,* Transcript of Magistrate's Hearing, at 201–04, 215, 338–39, 431–32, 471, 477.

an abdication of judicial responsibility.[6] The Court has read and studied this record word for word. In addition, the Court had the benefit of demeanor testimony on this as well as other issues during the original trial of this matter. The Court will therefore determine the outstanding issues upon the trial record and the record before Magistrate Hartenstine, and makes the following additional findings of fact and conclusions of law.

## GROSS AMOUNT OF BACK PAY

■ Plaintiff is entitled to be made whole for the losses she sustained as a result of her wrongful discharge.[7] This includes back pay from the date of discharge to the present, including such increases, if any, as she would have received within that period.[8] The defendant contends that salary increases were granted by its Executive Committee on an individual basis, depending in each instance upon an evaluation of the employee's performance, and that plaintiff's performance had so deteriorated that she would not have been granted any increase. Accordingly, defendant argues that it would be highly speculative to award any salary increase to plaintiff. The short answer is that where one's conduct has prevented a precise computation of damages, the injured party is not to be deprived of adequate damages. The trier of the fact may draw reasonable inferences from relevant facts, and all doubts are to be resolved in favor of the injured party; the wrongdoer does not become the beneficiary of his own wrongful conduct.[9] First, this Court has already rejected defendant's contention that McGee's job performance was the cause of her discharge; second, it is a fact that plaintiff received periodic increases; third, plaintiff's co-workers, engaged in similar activities, have received increases within the period here under consideration.

■ Plaintiff's job performance with defendant during her entire service earned her repeated advances in position and salary. She started in 1967 as an administrative assistant to an account executive at a salary of $8,000 per year. The next year she was promoted to account executive at $9,000 a year; thereafter she received yearly raises to $10,000, $12,500, and $15,000, and finally to $18,000, when she was notified of her discharge on May 15, 1973. She was promoted to account administrator, account executive and senior account executive. While her rise was meteoric, it would be unrealistic to assume she would have continued to receive the large annual raises she received up to the time of her discharge; so, too, it would be unrealistic to assume that she would not have received some increase. The grant of an increase in wages or salary is a normal incident of the way of life in the industrial and commercial

6. *See Campbell v. United States District Court,* 501 F.2d 196, 205–07 (9th Cir.), *cert. denied,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974); *cf. Mathews v. Weber,* 423 U.S. 261, 269–75, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). *Compare* Rule 53(b), (e)(2), Fed.R.Civ.P.

7. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *EEOC v. Steamfitters Local 638,* 542 F.2d 579 at 590 (2d Cir. 1976).

8. *Satty v. Nashville Gas Co.,* 522 U.S. 850, 855 (6th Cir. 1975), *petition for cert. filed,* 44 U.S. L.W. 3254 (U.S. Oct. 7, 1975) (No. 75–536); *see also Golay & Co. v. NLRB,* 447 F.2d 290, 294–95 (7th Cir. 1971), *cert. denied,* 404 U.S. 1058, 92 S.Ct. 737, 30 L.Ed.2d 745 (1972). The Supreme Court has stated that the back pay provision of Title VII was "expressly modeled on the backpay provision of the National Labor Relations Act" and has looked to cases arising under that act to interpret the scope of back pay in Title VII cases. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 419 & n. 11, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

9. *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264–65, 66 S.Ct. 574, 90 L.Ed. 652 (1946); *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562–63, 51 S.Ct. 248, 75 L.Ed. 544 (1931); *EEOC v. Steamfitters Local 638, supra* n. 7, 542 F.2d at 587; *Day v. Mathews,* 174 U.S.App.D.C. 231, 530 F.2d 1083, 1086 (1976); *Kaplan v. Theatrical Employees Local 659,* 525 F.2d 1354, 1362–63 (9th Cir. 1975); *Hairston v. McLean Trucking Co.,* 520 F.2d 226, 232–33 (4th Cir. 1975); *Meadows v. Ford Motor Co.,* 510 F.2d 939, 941–48 (6th Cir. 1975); *Johnson v. Goodyear Tire & Rubber Co.,* 491 F.2d 1364, 1379–80 (5th Cir. 1974).

world. The evidence warrants a finding that except for defendant's unlawful discharge of plaintiff, she would have, in the normal course of her continued employment with the defendant, received periodic salary increases.

In an effort to reach a fair evaluation of such likely increases, the Court has reviewed the payroll records of defendant's employees within the job category of "account executive" during the years 1973, 1974 and 1975. Each such employee was granted an increase in annual salary in each of those years. While the amount of the individual increases varied, all fell within a range of from seven to twenty per cent. However, plaintiff's basic salary varied substantially from those of some account executives, so that no precise yardstick for comparison purposes may be applied. In view of plaintiff's rapid rise, as the dollar amount of her salary increased, it is probable that the percentage rate of increase would level off. Thus for the first year after discharge the Court deems an increase of ten per cent appropriate; thereafter, seven and a half per cent. Accordingly, the Court computes the gross amount of back pay to which plaintiff is entitled as follows:

| | |
|---|---|
| Salary from May 1 to December 1, 1973, at $18,000 per year [10] | $12,000.00 |
| Salary for 1974 | 19,800.00 |
| Salary for 1975 | 21,285.00 |
| Salary from January 1 to September 30, 1976, at $22,881.38 per year | 17,161.04 |
| Total back salary | $70,246.04 |

In addition to salary, the plaintiff is entitled to receive as part of her back pay award any fringe benefits she would have received had she remained employed by defendant.[11] Defendant has already paid to plaintiff her interest in defendant's profit-sharing and pension plans as of the time of her discharge. Further, plaintiff spent $613.14 after her discharge to replace Blue Cross/Blue Shield coverage which defendant had formerly provided, and incurred medical expenses (not covered by her health insurance) of which $1,837.92 would have been reimbursable under defendant's major medical policy. Plaintiff is thus entitled to a total of $2,451.06 in addition to her salary, making a total gross back pay award of $72,697.10.

## DEDUCTIONS FROM BACK PAY

Once the gross amount of back pay owed plaintiff has been determined, the burden shifts to the defendant to prove what should be deducted therefrom as "[i]nterim earnings or amounts earnable with reasonable diligence."[12] The parties stipulated that plaintiff earned $1,400 as a typist in 1974 and 1975. The sum of $5,385 received by plaintiff as unemployment compensation since her discharge should further be deducted from the amount owed her,[13] which, together with the aforementioned

10. The parties stipulated that plaintiff was last paid on April 30, 1973.

11. *Satty v. Nashville Gas Co.*, 522 F.2d 850, 855 (6th Cir. 1975), *petition for cert. filed*, 44 U.S. L.W. 3254 (U.S. Oct. 7, 1975) (No. 75–536); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 263 (5th Cir. 1974); *Bowe v. Colgate, Palmolive Co.*, 489 F.2d 896, 903 (7th Cir. 1973).

12. 42 U.S.C. § 2000e–5(g); *see Kaplan v. Theatrical Employees Local 659*, 525 F.2d 1354, 1363 (9th Cir. 1975); *Sprogis v. United Air Lines, Inc.*, 517 F.2d 387, 392 (7th Cir. 1975); *Inda v. United Air Lines, Inc.*, 405 F.Supp. 426, 434 (N.D.Cal.1975). This is the rule in cases under the National Labor Relations Act, *see* n. 8 *supra*. *NLRB v. Nickey Chevrolet Sales, Inc.*, 493 F.2d 103, 107–08 (7th Cir.), *cert. denied*, 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974); *NLRB v. Madison Courier, Inc.*, 153 U.S.App. D.C. 232, 472 F.2d 1307, 1318 (1972); *NLRB v. Miami Coca-Cola Bottling Co.*, 360 F.2d 569, 575 (5th Cir. 1966); *NLRB v. Mastro Plastics Corp.*, 354 F.2d 170, 178–79 (2d Cir. 1965); *NLRB v. Brown & Root, Inc.*, 311 F.2d 447, 454 (8th Cir. 1963).

13. *EEOC v. Steamfitters Local 638*, *supra* n. 7, 542 F.2d at 579–592; *Satty v. Nashville Gas Co.*, 522 F.2d 850, 855 (6th Cir. 1975), *petition for cert. filed*, 44 U.S.L.W. 3254 (U.S. Oct. 7, 1975) (No. 75–536); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 721 (7th Cir. 1969).

interim earnings, requires a total deduction of $6,785, leaving a net sum of $65,912.10.

Defendant claims that it has shown that a further deduction should be made from plaintiff's back pay award for amounts earnable with reasonable diligence. Its position is that the failure of plaintiff to use all available means of pursuing employment opportunities · establishes lack of due diligence in seeking employment. However, defendant's burden of proving a lack of diligence is not satisfied merely by a showing that there were further actions that plaintiff could have taken in pursuit of employment. Rather, defendant must show that the course of conduct plaintiff actually followed was so deficient as to constitute an unreasonable failure to seek employment. The range of reasonable conduct is broad and the injured plaintiff must be given the benefit of every doubt in assessing her conduct.[14]

■ Plaintiff's skills come within the fairly limited or specialized field of pharmaceutical advertising. Her only training was in this field. Prior to September 1975, plaintiff sought work both within her area of competence and without it. In that period she contacted, or attempted to contact, seven advertising agencies, ten firms in related areas (such as trade publications or companies which organized audio-visual medical seminars), and eight employment agencies. She also applied for work with two government agencies. She did not apply to every advertising agency in her field, nor did she make extensive use of classified advertisements or employment agencies which specialize in placing advertising executives. Instead, she relied upon her personal contacts within advertising agencies and upon informal means such as personal references and attendance at trade association meetings, in an effort to find job openings for which she might be suited. As previously noted, her efforts were unsuccessful except that she was referred to some part-time secretarial work by one of the employment agencies.

The evidence in the case does not support defendant's contention that plaintiff failed to use reasonable means of seeking employment. Defendant has not shown that plaintiff was not active in her efforts; rather, it is clear that plaintiff attempted to obtain alternate employment. The specialized nature of pharmaceutical advertising and promotion necessarily limited the available opportunities, and word of mouth contact was an effective means of seeking job opportunities. The testimony of defendant's own expert witness, the personnel director of the largest pharmaceutical advertising agency,[15] lends substantial support to plaintiff's contention that her actions were reasonably diligent. He testified that his usual practice in finding qualified persons for vacancies at his firm is to examine his personal file of contacts made over the years and to inquire about potentially available executives from his own employees and from

14. *See Williams v. Albemarle City Board of Educ.*, 508 F.2d 1242, 1243 (4th Cir. 1974) (en banc); *Inda v. United Air Lines, Inc.*, 405 F.Supp. 426, 435 (N.D.Cal.1975); *Lowry v. Whitaker Cable Corp.*, 348 F.Supp. 202, 218 (W.D.Mo.1972), aff'd, 472 F.2d 1210 (8th Cir. 1973). *Cf. Ellerman Lines, Ltd. v. The President Harding*, 288 F.2d 288, 290 (2d Cir. 1961):

It is not fatal to recovery that one course of action, reasonably open but not followed, would have avoided further injury whereas another, also reasonable and taken, produced it. . . . The standard of what reason requires of the injured party is lower than in other branches of the law. . . . [Plaintiff] ought not be deprived of recovery *if its* conduct came within the range of reason, even if the full light of reason was not, in fact, brought to bear.

The conduct which will bar recovery of back pay under the National Labor Relations Act, see n. 8 *supra*, has been characterized as "a clearly unjustifiable refusal to take desirable new employment" or "a willful loss of earnings." *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 199–200, 61 S.Ct. 845, 855, 85 L.Ed. 1271 (1941); *NLRB v. Mastro Plastics Corp.*, 354 F.2d 170, 174 n. 3 (2d Cir. 1965). *See also Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 148–49 (2d Cir. 1968); *NLRB v. Arduini Mfg. Corp.*, 394 F.2d 420, 423 (1st Cir. 1968); *NLRB v. Cashman Auto Co.*, 223 F.2d 832, 836 (1st Cir. 1955).

15. Plaintiff applied to this firm for employment but her application was rejected in favor of another applicant whom the witness felt was better qualified for the position.

persons he knows in other agencies. Thus he relies primarily on the very means used by plaintiff in her efforts to seek employment—word of mouth and personal contacts. Plaintiff's use of the same method as that employed by an experienced personnel director was not unreasonable. Upon careful examination of the entire record, the Court finds that the defendant has failed to sustain its burden of showing that the plaintiff did not diligently seek employment in the period following her discharge and prior to September 1975.

■ However, plaintiff made no effort to secure employment after September 1975 because she expected to be reinstated immediately following this Court's earlier opinion.[16] Defendant claims that plaintiff is entitled to no back pay after that time. However, Title VII requires that a back pay award be reduced only by "amounts earnable with reasonable diligence." To sustain its burden of establishing such deductions, the defendant must show not only that plaintiff failed to exercise due diligence in seeking employment, but also that had she been diligent she might have found employment and had some earnings.[17] By the testimony of defendant's own witnesses, however, the job market for advertising executives "stunk terrible" in 1975. Defendant has not shown that any jobs were available to plaintiff at the time she stopped looking for work, and has thus failed to sustain its burden of showing any

"amounts earnable with reasonable diligence" after plaintiff was discharged. Plaintiff is thus entitled to a net back pay award of $65,912.10.

REINSTATEMENT

■ Reinstatement is a troubling aspect of this case, already beset by a number of difficult problems. Like the other remedies available under Title VII, reinstatement is not mandatory upon a finding that an employee has been discriminatorily discharged, but is an equitable remedy whose appropriateness depends upon the discretion of the court in the light of the facts of each individual case.[18] However, since the purpose of reinstatement is to make the plaintiff whole for the injury she has suffered, it, like back pay, should be denied

> only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.[19]

■ This litigation has been marked by more than the usual hostility between the parties. Some antagonism is the natural result of the filing and litigation of discrimination and retaliation charges and to deny reinstatement merely because of the existence of hostility might be contrary to the remedial goals of Title VII.[20] However, in this case the job from which plaintiff was discharged required a close working rela-

16. Although defendant claims plaintiff stopped looking for work in December 1974, she made at least two further efforts through employment agencies. Moreover, the job market for advertising executives was generally bad throughout most of 1975, and so defendant has not shown that any jobs were available for plaintiff at any time during the year.

17. See Sparks v. Griffin, 460 F.2d 433, 443 (5th Cir. 1972); Hegler v. Board of Educ., 447 F.2d 1078, 1081 (8th Cir. 1971); cf. Inda v. United Air Lines, Inc., 405 F.Supp. 426, 435 (N.D.Cal. 1975).

18. 42 U.S.C. § 2000e–5(g) ("the court may . . . order such affirmative action as may be appropriate") (emphasis supplied); Taylor v. Safeway Stores, Inc., 524 F.2d 263, 268 (10th Cir. 1975); Brito v. Zia Co., 478 F.2d 1200, 1204

(10th Cir. 1973); see Albemarle Paper Co. v. Moody, 422 U.S. 405, 415–16, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). See also NLRB v. Commonwealth Foods, Inc. (West End), 506 F.2d 1065 (4th Cir. 1974); NLRB v. King Louie Bowling Corp., 472 F.2d 1192 (8th Cir. 1973); see n. 8 supra.

19. Albemarle Paper Co. v. Moody, 422 U.S. 405, 421, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); see also Franks v. Bowman Transp. Co., 424 U.S. 747, 770, 96 S.Ct. 1251, 1267, 47 L.Ed.2d 444 (1976).

20. Cf. Burton v. Cascade School Dist., 512 F.2d 850, 855–56 (9th Cir.), cert. denied, 423 U.S. 839, 96 S.Ct. 69, 46 L.Ed.2d 59 (1975) (Lumbard, J., dissenting).

tionship between plaintiff and top executives of defendant. It also involved frequent personal contact with defendant's clients, with plaintiff acting as defendant's representative. Lack of complete trust and confidence between plaintiff and defendant could lead to misunderstandings, misrepresentations and mistakes, and could seriously damage defendant's relationship with its clients. The situation here is quite unlike that presented when reinstatement is sought for an assembly line or clerical worker, or even for an executive whose job is not as sensitive for his employer's interests as is plaintiff's job here. The Court is convinced that after three and a half years of bitter litigation the necessary trust and confidence can never exist between plaintiff and defendant. To order reinstatement on the facts of this case would merely be to sow the seeds of future litigation, and would unduly burden the defendant. Thus, reinstatement will not be ordered in this case.[21] However, it would be unjust to plaintiff to deny her reinstatement without giving her a reasonable opportunity to find other employment. The Court is of the view that in the current market and economic climate in the pharmaceutical advertising industry, by the exercise of diligent effort plaintiff should be able to secure employment at a salary commensurate with her skills within a year. Thus the Court will award an additional one year's salary of $22,881.38.

## CONCLUSION

The plaintiff is entitled to judgment in the amount of $88,793.48, plus six per cent interest payable quarterly.

Judgment may be entered accordingly.

---

21. *See Hyland v. Kenner Prod. Co.,* 11 CCH Empl. Prac. Dec. ¶ 10,926 at 7912–13 (S.D. Ohio May 5, 1976); *cf. Burton v. Cascade School Dist.,* 512 F.2d 850, 852–54 (9th Cir.), *cert. denied,* 423 U.S. 839, 96 S.Ct. 69, 46 L.Ed.2d 59 (1975); *Held v. Missouri Pacific R.R.,* 373 F.Supp. 996, 1004 (S.D.Tex.1974).