**Virginia THURBER, Plaintiff,**

v.

**JACK REILLY'S INC., Defendant.**

**Civ. A. No. 77–33–G.**

United States District Court,
D. Massachusetts.

Aug. 20, 1981.

Pamela Taylor, Geller, Miller, Taylor, Weinberg & Labovitz, Cambridge, Mass., Philip Weinberg, Geller & Weinberg, Boston, Mass., for plaintiff.

Bruce G. McNeill, Bradley, Barry & Tarlow, Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

GARRITY, District Judge.

Plaintiff Virginia Thurber brought this action against Jack Reilly's Inc., (hereafter Jack's) alleging discrimination against her on the basis of gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and under the Massachusetts antidiscrimination statute, M.G.L. c. 151B. Defendant is an employer within the meaning of Title VII, and all jurisdictional requirements have been met. Jurisdiction over this action is therefore proper under 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. § 1343. We have pendent jurisdiction over the state law claim.

At the conclusion of the non-jury trial of this case on May 5, 1981, the court entered findings of fact and conclusions of law in favor of the plaintiff as to the liability issues raised by this litigation and made preliminary findings as to damages, but, on defendant's motion, reserved the final determination of damages pending the submission of the plaintiff's tax returns for the years in question. We have been informed by defendant's counsel that the returns have been received and that they confirm plaintiff's trial testimony to the effect that she had no income during the period from May 31, 1975 through July 1, 1976. Therefore, the damage issue is now ripe for decision.

At the trial of this action, plaintiff established that she was first employed as a waitress at Jack's for approximately two weeks in November, 1972, and that she voluntarily terminated her employment there at that time. She was rehired as a waitress at Jack's beginning in November, 1973, with the understanding that she had had bartending experience and would be interested in applying for any bartending positions which became available. During the subsequent period, plaintiff satisfactorily performed her responsibilities as a waitress.

█ On or about the second week in November, 1974, and several times thereafter, Thurber requested Jack's management to promote her to bartenders' positions which became available periodically. Despite the defendant's manager's knowledge of Thurber's desire to be employed as a bartender, her previous work experience in that capacity, and her job seniority, the defendant refused to promote her to the position of bartender trainee, and consistently hired only males for these positions. As we stated in our findings in open court at the end of the trial in this case, by failing to promote the plaintiff despite her job

qualifications, due to her sex, the defendant, through its agents, intentionally discriminated against her on the basis of her gender, in violation of her rights under Title VII and M.G.L. c. 151B. Finally, on or about May 31, 1975, in retaliation for her continued insistence on a promotion, Jack's managers constructively discharged Thurber by reducing her work schedule from three shifts per week to one, effectively cutting her wages by two-thirds. The plaintiff left her employment at Jacks at that time.

During the period following her constructive discharge on May 31, 1975, Thurber attempted to locate work. She eventually obtained employment as a full-time bartender at the Harvest Restaurant in Cambridge on July 1, 1976, where she continued to be employed until January, 1977, when she was laid off due to a drop in business.

We turn now to the findings of fact and conclusions of law with respect to damages. We note, preliminarily, that under the circumstances of this case, the same issues are presented with respect to the state anti-discrimination statute and Title VII.[1] We note, too, that the plaintiff's damages can be divided into two categories: those sustained during the period after she demanded a promotion but before she was constructively discharged (from mid-November, 1974 until May 31, 1975), and those sustained during the period of her unemployment (from May 31, 1975 through July 1, 1976).

We turn first to the amount recoverable by the plaintiff for the period that she remained employed at Jack's, after her mid-November request for a promotion. During this period, Thurber sustained economic loss entitling her to back pay, which shall be computed as the gross amount, including wages and gratuities, that the plaintiff would have earned had she been employed at Jack's as a bartender.

At the conclusion of the trial, we made the following preliminary findings of fact with respect to damages sustained by the plaintiff while she continued to work at Jack's.

(1) The plaintiff sustained no economic loss for the eight-week period she would have spent as a bartender trainee.

(2) The period for which plaintiff is entitled to damages is to be measured from the time of her first request for a promotion which should have been granted, in mid-November, 1974, until her constructive discharge on or about May 31, 1975—a period of twenty weeks.

(3) The plaintiff worked an average of three 9-hour shifts, or 27 hours, per week, and she would have continued to work the same number of hours had she been promoted to bartender.

(4) During the 1974–75 period, a waitress' salary was $1.20/hour and that of a bartender was $3.00/hour, the salary differential being $1.80/hour.

(5) On the average, an experienced bartender earned $50 in tips per shift, and plaintiff earned an average of $35 per shift in tips, the differential in gratuities being $15 per shift.

Based on these findings of fact, which we reaffirm, we conclude that plaintiff would have earned $972 more in salary, and $900 more in gratuities, had she been employed as a bartender during the period following the discriminatory denial of her request for a promotion. Therefore, the back pay award for this period is $1,872.

The defendant argues that the plaintiff is not entitled to any damages for the period following her constructive discharge because she failed to carry the burden of demonstrating that she attempted to mitigate damages by seeking other employment. We disagree. It is well established that the willful loss of earnings is an af-

---

1. In addition to back pay, which is recoverable under both statutes, plaintiff originally sought an award of damages beyond back pay under the state statute, citing *Bournewood Hospital Inc. v. Massachusetts Commission Against Dis-* *crimination*, 1976, 371 Mass. 303, 358 N.E.2d 235. However, plaintiff has withdrawn her request for damages beyond those available under Title VII.

firmative defense, and the burden of proving it rests with the employer. *EEOC v. Kallir, Philips, Ross, Inc.*, S.D.N.Y., 1976, 420 F.Supp. 919, 924, aff'd, 2 Cir., 1977, 559 F.2d 1203; *Kaplan v. Theatrical Employees Local 659*, 9 Cir., 1975, 525 F.2d 1354, 1363; *Sprogis v. United Air Lines, Inc.*, 7 Cir., 1975, 517 F.2d 387, 392. To fulfill this burden, the defendant must show more than that there were further actions that plaintiff could have taken in pursuit of employment. Rather, the defendant must show that the course of conduct plaintiff actually followed was so deficient as to constitute an unreasonable failure to seek employment. The range of reasonable conduct is broad and the injured plaintiff must be given the benefit of doubt in assessing her conduct. *EEOC v. Kallir, Philips, Ross, Inc.*, 420 F.Supp. at 925. The conduct which will bar recovery of back pay under the National Labor Relations Act, upon which the back pay provisions of Title VII were modeled, *Albemarle Paper Co. v. Moody*, 1975, 422 U.S. 405, 419 n. 11, 95 S.Ct. 2362, 2372 n. 11, 45 L.Ed.2d 280 has been characterized as "a clearly unjustifiable refusal to take desirable new employment" or "a willful loss of earnings," *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 199–200, 61 S.Ct. 845, 854–55, 85 L.Ed. 1271; *NLRB v. Arduini Mfg. Corp.*, 1 Cir., 1968, 394 F.2d 420, 423; *NLRB v. Cashman Auto Co.*, 1 Cir., 1955, 223 F.2d 832.

The defendant has completely failed to carry its burden of showing failure to mitigate. Plaintiff used various means in an unsuccessful effort to locate employment, including listings with the state unemployment agency, bulletin boards and personal contacts. She did not limit her search to any particular kind of employment, but sought jobs as a waitress, bartender, and clerical worker. She made frequent applications for employment and never turned down an offer of employment. Therefore, plaintiff is entitled to recover for the period of her unemployment.

The amount recoverable by Thurber for her period of unemployment raises another legal question. Plaintiff claims that she is entitled to a back pay award representing the full bartender's salary ($3.00 per hour) plus gratuities ($50 per shift), assuming a 27 hour work week, for the 60 week period of her unemployment, for an award of $13,-860 for this period. If added to the pre-discharge damages of $1,872, the total award would be $15,732. The defendant argues that the plaintiff's award must be reduced by the amount of unemployment compensation and food stamps she received during this period.

The courts are split concerning whether unemployment compensation should be deducted from a recovery of back pay under Title VII. The cases holding that state unemployment compensation should not be deducted reason that such payments are made to pursue an independent social policy, and that an employer guilty of discrimination should not obtain the benefits of that policy. *Abron v. Black & Decker Mfg. Co.*, D.Md., 1977, 439 F.Supp. 1095, 1115; *Tidwell v. American Oil Co.*, D.Utah, 1971, 332 F.Supp. 424; see also *NLRB v. Gullett Gin Co.*, 1950, 340 U.S. 361, 364, 71 S.Ct. 337, 339, 95 L.Ed. 337 (holding that state unemployment payments are not deductible from a backpay award under the National Labor Relations Act). Several courts, however, have held that these payments are deductible. *EEOC v. Steamfitters Local 638*, 2 Cir., 1976, 542 F.2d 579, 591–92; *Satty v. Nashville Gas Co.*, 6 Cir., 1975, 522 F.2d 850, 855, aff'd in part vacated in part, 1977, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1975); *EEOC v. Kallir, Philips, Ross, Inc.*, 420 F.Supp. at 925, aff'd 2 Cir., 1977, 559 F.2d 1203. This view is based on the notion that "[t]he back pay award is not punitive in nature, but equitable—designed to restore the recipients to their rightful economic status absent the effects of the unlawful discrimination," *Robinson v. Lorillard Corp.*, 4 Cir., 444 F.2d 791 at 802, petition for cert. dismissed, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971), and that, therefore, "there is no compelling reason for providing the injured party with double recovery for his lost employment." *EEOC v. Steamfitters Local 638, supra* at 592.

Under the particular circumstances of this case, we conclude that the amount that Thurber received in unemployment benefits should be deducted from her award. The more recent Court of Appeals decisions, cited above, have upheld deductions of this sort. Also, equitable considerations militate in favor of a reduction of the gross back pay award here. The unemployment compensation paid to the plaintiff is not recoverable from her by the commonwealth under M.G.L. c. 151A, § 69, and, since Thurber remained unemployed for a relatively long period of time, the amount involved is not insubstantial. In our opinion, under these circumstances a double recovery is not necessary to make plaintiff whole for the injury she sustained due to defendant's discriminatory actions. For the same reasons, the amount plaintiff received in food stamps during her period of unemployment shall be deducted from her back pay award.[2]

With this reduction, the damages recoverable by the plaintiff as back pay are $13,675. Since prevailing plaintiffs in Title VII actions are entitled to a reasonable rate of interest on an award of back pay in order to compensate them for the loss of the use of the money during the back pay period, *Chastang v. Flynn & Emrich Co.*, D.Md., 1974, 381 F.Supp. 1348, aff'd 541 F.2d 1040 (4 Cir. 1976); *Howard v. Ward County*, D.N.D., 1976, 418 F.Supp. 494, 506; *DiSalvo v. Chamber of Commerce*, W.D.Mo., 1976, 416 F.Supp. 844, modified, 568 F.2d 593 (8 Cir., 1978), Thurber shall be awarded prejudgment interest in the amount of eight per cent per annum measured from the dates on which she should have received her bartender's wages.[3]

The plaintiff having prevailed, she is, under the circumstances of this case, entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 2000e–5(k). On July 27, 1981, plaintiff's counsel submitted a detailed application for attorneys' fees and costs, accompanied by a supporting affidavit. Counsel for the plaintiff and defendant are to confer and attempt to reach a stipulation on the amount of attorneys' fees recoverable by the plaintiff. If such stipulation is not reached, defendant shall file an opposition to plaintiff's counsel's petition, accompanied by a supporting memorandum, within ten days of the date of this order, and plaintiff shall file its response thereto, if any, within seven (7) days thereafter. It is further ordered that plaintiff's counsel submit a form of judgment in conformity with the rulings set forth in this opinion within 20 days.

---

**2.** Plaintiff testified that she received $23 per week in unemployment compensation for all but one of the sixty weeks that she was unemployed, for a total of $1,357. In addition, she received $700 in food stamps during this period. The total deduction is therefore $2,057.

**3.** Counsel shall endeavor to stipulate this amount of interest. A first draft of such a computation shall be prepared by plaintiff's counsel and presented to defense counsel within two weeks of the date of this memorandum of decision. If the parties are unable to agree, they shall submit their disagreement to Deputy Clerk Moynahan.